SPIEGELBERG v. GARVAN, Alien Property Custodian (two cases).

(District Court, S. D. New York. July 10, 1919.)

War ⊗⇒10(2)—Trading with the Enemy Act—Suit by Claimant of Property—Parties.

Under Trading with the Enemy Act, § 9 (Comp. St. 1918, § 3115½e), providing that any person not an enemy claiming an interest in money or property in the hands of the alien property custodian may bring suit in equity therefor in a federal District Court, making the custodian a party, the enemy owner, if a nonresident alien, is not a necessary party to such suit.

In Equity. Suits by Isaac N. Spiegelberg against Francis P. Garvan, as Alien Property Custodian. On motions to dismiss bills. Denied.

Motion by defendant to dismiss each bill.

The grounds urged are (a) that the enemy, the alleged debtor, should be made a party defendant, and (b) that it does not appear that at the time of the filing of the bill any property of the enemy was held by the Alien Property Custodian.

From the complaints herein the following facts appear:

By the will of Solomon J. Spiegelberg, probated in the New York surrogate's court on April 28, 1898, plaintiff and Frederick Spiegelberg were appointed trustees for certain funds in which one Emma Spiegelberg, who resides in Vienna, Austria, in the one case, and one Bertha Elias, who resides in Hamburg, Germany, in the other case, were the life beneficiaries. Prior to the entry of the United States into the war, plaintiff in his individual capacity advanced to each of the beneficiaries the sum of $10,650, upon the understanding that he should reimburse himself for such advances from the installments of income from the trust fund as such installments became due, for the ensuing 18 months. He did so reimburse himself to the extent of $6,400, leaving $4,250 in each case still due and unpaid.

As the income accumulated from the trust fund, plaintiff demanded from his cotrustee the payment of this amount. The cotrustee reported to the Alien Property Custodian the amount of accumulated income on hand, and also the claim of plaintiff, but thereafter deposited the whole amount of such income with the Alien Property Custodian.

On January 29, 1919, plaintiff, in compliance with section 9 of the Trading with the Enemy Act (Act Oct. 6, 1917, c. 106, 40 Stat. 419 [Comp. St. 1918, § 3115½e]), filed his claim with the Alien Property Custodian, who refused to pay the same; and thereafter, to wit, on March 18, 1919, these suits were brought.

Section 9 of the Trading with the Enemy Act (herewith quoted for convenience) is as follows:

"Sec. 9. That any person, not an enemy, or ally of enemy, claiming any interest, right, or title in any money or other property which may have been conveyed, transferred, assigned, delivered, or paid to the Alien Property Custodian hereunder, and held by him or by the Treasurer of the United States, or to whom any debt may be owing from an enemy, or ally of enemy, whose property or any part thereof shall have been conveyed, transferred, assigned, delivered, or paid to the Alien Property Custodian hereunder, and held by him or by the Treasurer of the United States, may file with the said Custodian a notice of his claim under oath and in such form and containing such particu-

lars as the said Custodian shall require; and the President, if application is made therefor by the claimant, may, with the assent of the owner of said property and of all persons claiming any right, title, or interest therein, order the payment, conveyance, transfer, assignment or delivery to said claimant of the money or other property so held by the Alien Property Custodian or by the Treasurer of the United States or of the interest therein to which the President shall determine said claimant is entitled: Provided, that no such order by the President shall bar any person from the prosecution of any suit at law or in equity against the claimant to establish any right, title or interest which he may have in such money or other property. If the President shall not so order within sixty days after the filing of such application, or if the claimant shall have filed the notice as above required and shall have made no application to the President, said claimant may, at any time before the expiration of six months after the end of the war, institute a suit in equity in the District Court of the United States for the district in which such claimant resides, or, if a corporation, where it has its principal place of business (to which suit the Alien Property Custodian or the Treasurer of the United States, as the case may be, shall be made a party defendant), to establish the interest, right, title, or debt so claimed, and if suit shall be so instituted then the money or other property of the enemy, or ally of enemy, against whom such interest, right, or title is asserted, or debt claimed, shall be retained in the custody of the Alien Property Custodian, or in the Treasury of the United States, as provided in this act, and until any final judgment or decree which shall be entered in favor of the claimant shall be fully satisfied by payment or conveyance, transfer, assignment, or delivery by the defendant or by the Alien Property Custodian or Treasurer of the United States on order of the court, or until final judgment or decree shall be entered against the claimant, or suit otherwise terminated.

"Except as herein provided, the money or other property conveyed, transferred, assigned, delivered, or paid to the Alien Property Custodian shall not be liable to lien, attachment, garnishment, trustee process, or execution or subject to any order or decree of any court."

Francis G. Caffey, U. S. Atty., of New York City (Earl B. Barnes, Asst. U. S. Atty., of New York City, of counsel), for the motion.

Wise & Seligsberg, of New York City (Edmond E. Wise, of New York City, of counsel), opposed.

MAYER, District Judge (after stating the facts as above). 1. The first ground upon which defendant has moved to dismiss the bills is that the aliens in each case are necessary party defendants. This contention calls for the construction in this regard of section 9 of the Trading with the Enemy Act. An analysis of that section shows that where the property of an enemy has come into the custody of the Alien Property Custodian, section 9 affords any person not an enemy or ally of enemy claiming against such property, in whole or in part, one of two methods of pursuing the claim. One method is by executive action, and the other through court proceedings. If the President acted, it was necessary for him to obtain the assent inter alios of the owner of the property.

The reason for this provision seems explainable upon the ground that the executive, when thus acting, can at best ordinarily only conduct an investigation, and there is not the opportunity, in such circumstances, for a real judicial proceeding. Hence, in the opinion of Congress, it was but fair that the executive could act only upon the assent of the owner.

The legislation in this regard may have contemplated the possibility during the war, on the one hand, of communication with the enemy in the discretion of the President through intermediate diplomatic channels; and, on the other hand, alien enemies, under section 2 (c) of the act (Comp. St. 1918, § 3115½aa), might be in the United States, and might, for one reason or another, wish to give assent. In any event, it will be noted that section 9 contemplates action within six months after the end of the war, during which period executive action could be taken with the assent of one who had been an alien enemy during the war.

Where, however, presidential action was not asked or availed of, then a nonenemy was authorized to institute a suit in equity, in the appropriate District Court of the United States. It will be noted that there is no provision as to the assent of the owner in the event of the institution of an equity suit.

It is true that section 9 provides:

"To which suit the Alien Property Custodian or the Treasurer of the United States as the case may be, shall be made a party defendant."

The reason for the insertion of this provision was in all probability to remove any doubt that the Alien Property Custodian should be made a party to such suits in equity as section 9 contemplated. If this provision had been omitted, there might readily have been some difference of opinion as to whether the Alien Property Custodian was or was not a necessary party defendant.

It is significant, however, that section 9 does not contain any provision requiring that the alien enemy should be made a party defendant. If Congress had so intended, the insertion of the necessary language would have been simple.

It seems to be clear that the legislative intent was to leave questions of jurisdiction and procedure normally in the same situation as jurisdiction would be had and procedure followed in any equity suit in the United States District Courts.

In other words, Congress, in effect, said to a claimant that it conferred upon him all of the rights and remedies which would obtain in any equity suit, but that, in addition, claimant must join the Alien Property Custodian as a party defendant. If Congress had intended to increase or diminish the jurisdiction of courts of equity in regard to claims arising under section 9, it must be assumed that such intent would have been plainly manifested. What Congress sought to accomplish, inter alia, was the establishment of a uniform method of litigation in cases of this character. Therefore, for instance, Congress took away from claimants the right to sue in state courts, and thus to obtain jurisdiction by attachment or other similar remedy.

In the case at bar plaintiff, prior to the enactment of the Trading with the Enemy Act (Comp. St. 1918, §§ 3115½a–3115½j), could have begun in the state court, an appropriate suit or action against the nonresident alien enemies, could have attached funds in the hands of the trustees, and could have obtained jurisdiction through the medium of an order of publication. If the nonresident defendants failed to ap-

pear, the state court would, nevertheless, have acquired jurisdiction and could have rendered its appropriate judgment or decree.

When, however, a claimant such as plaintiff was remitted to the remedy under section 9, he lost the opportunity to begin his suit or action in a court where jurisdiction of the absent defendant could be obtained. When plaintiff was thus compelled by virtue of section 9 to bring his suit in this court, he at once found himself in a position where jurisdiction could not be obtained; for the reason that the United States courts, at common law and in equity, cannot obtain jurisdiction, by means of either attachment or publication over a defendant who is without the jurisdiction. Big Vein Coal Co. v. Read, 229 U. S. 31, 33 Sup. Ct. 694, 57 L. Ed. 1053; Judicial Code, § 50 (Act March 3, 1911, c. 231, 36 Stat. 1101 [Comp. St. § 1032]).

There is not any process nor order by which this court can bring in the nonresident alien enemy as a party defendant.

Under section 50 of the Judicial Code and Equity Rule 39 (198 Fed. xxix, 115 C. C. A. xxix), the rights of such absent defendant are safeguarded; but both section 50, supra, and equity rule 39 make clear that the court may proceed in the absence of a person who is a proper party to the suit.

In a proceeding in the state court before the act, defendants would have been necessary parties to the suits; but by requiring plaintiff to go into one of the United States District Courts, and providing that the Alien Property Custodian should be a party defendant, it is quite plain that Congress intended that the Alien Property Custodian was the only necessary party defendant, because it must be assumed that Congress would not legislate in a futile way so as to require a person to be a party defendant over whom the United States courts could not acquire jurisdiction.

In view of the foregoing, it may be repeated that, if Congress had intended that the alien enemy should be made a party defendant, it would have so stated in clear language, in view of the fact that such language would be necessary in order (if it had the power so to do) to confer jurisdiction over an absent defendant, where no such jurisdiction had ever been conferred before.

Under the Trading with the Enemy Act, it is provided in section 2 thereof as follows:

"Sec. 2. That the word 'enemy,' as used herein, shall be deemed to mean, for the purposes of such trading and of this act—

"(a) Any individual, partnership, or other body of individuals, of any nationality, resident within the territory (including that occupied by the military and naval forces) of any nation with which the United States is at war, or resident outside the United States and doing business within such territory, and any corporation incorporated within such territory of any nation with which the United States is at war or incorporated within any country other than the United States and doing business within such territory. * * *

"(c) Such other individuals, or body or class of individuals, as may be natives, citizens, or subjects of any nation with which the United States is at war, other than citizens of the United States, wherever resident or wherever doing business, as the President, if he shall find the safety of the United States or the successful prosecution of the war shall so require, may, by proclamation, include within the term 'enemy.'"

By virtue of subdivision (c) of section 2, supra, it is plain that the President could, by proclamation, include within the term named persons who were resident within the jurisdiction, so that an enemy might be within the jurisdiction or without the jurisdiction, and in one case could be served with process and in another case could not.

Congress must be presumed to have understood that in some situations the District Court could obtain jurisdiction, while in other situations it could not. Thus it left flexible the practical acquisition of jurisdiction, to be determined by the status and location of the alien enemy concerned.

It is unnecessary for me to determine whether an alien enemy, under section 2, subdivision (c), if within the district, is a necessary party defendant; but it is certain that a nonresident alien enemy is not. To the contention of the government that the alien enemy is an indispensable party may be opposed the suggestion that the contention begs the question. Congress had ample power, in dealing with this particular subject-matter, to determine whether or not the alien enemy should be a party defendant, and if the statute did not so require, then, of course, the alien enemy was not an indispensable party.

The Senate and House committees which had in charge the framing of the act did not overlook the question here involved. In the Senate report to accompany the Trading with the Enemy Act it is stated, at page 8:

"Discussing section 9: Protects American citizens who have any claim or interest, right, or title in or to any money or property which has been paid or conveyed to the Alien Property Custodian. This section is necessary to preserve and protect innocent claimants notwithstanding the enforced absence of the parties in interest."

The House report, at page 12, is still more emphatic:

"Innocent claimants of property rights and titles held by the Custodian may litigate against the Custodian as effectually as against the enemy or ally of an enemy (section 9, pp. 10, 11). Thus the preservation and protection of property and property rights are afforded innocent claimants notwithstanding the enforced absence of enemy parties in interest."

In the foregoing extracts from the committee reports is to be found strong confirmation of the construction of the statute here arrived at.

It is suggested by counsel for defendant that the failure to make the alien enemy a party defendant may lead in some cases to fraud and collusion. This is, of course, a possibility in any lawsuit; but, as it is the duty of the Alien Property Custodian to put a plaintiff to his proof, it must be assumed that the usual safeguards of court proceedings will protect against possible wrongdoing.

There is nothing in Watts & Co., Ltd., v. Unione Austriaca di Navigazione, 248 U. S. 9, 39 S. Ct. 1, 63 L. Ed. 100, decided November 4, 1918, nor in the Kaiser Wilhelm Second, 246 Fed. 786, 159 C. C. A. 88, L. R. A. 1918C, 795, contrary to the above conclusion. In both of the cases supra, the court had acquired jurisdiction, and both decisions held, in effect, that the rights of an absent alien would be protected in the manner and in the circumstances to which these cases refer. In neither of these cases, however, was there any question, such as is

here presented, as to who are necessary parties defendant under the particular act here under consideration.

With the same sense of justice and fairness exhibited by these two decisions, it is in the power of the trial court to postpone the trial of any cause, or to take testimony and then determine whether some appropriate effort should be made to notify an absent defendant. This power a court of equity undoubtedly has, as matter of discretion, but, in addition, the act has confided to the District Courts of the United States a large measure of discretion in this and other situations. Section 17 provides:

"Sec. 17. That the District Courts of the United States are hereby given jurisdiction to make and enter all such rules as to notice and otherwise, and all such orders and decrees, and to issue such process as may be necessary and proper in the premises to enforce the provisions of this act, with a right of appeal from the final order or decree of such court. * * *" Comp. St. 1918, § 3115½i.

It may very well be that in one case the facts may be entirely clear, and that there may be available to the Alien Property Custodian all of the facts which could possibly be adduced. On the other hand, in another case, there may be doubt or lack of proof, or unsatisfactory proof, which will move the trial judge to postpone his determination to such later time, and with such conditions as he may deem proper, and with such notice as he may deem practicable.

The point is that it must be assumed that the District Courts will so proceed in an equity suit as to assure the highest measure of fairness and justice to the absent defendant. What may be proper, just, or desirable in any particular equity suit must be determined by the court trying that suit; but in the case at bar the question is solely one of jurisdiction, and it certainly never could have been the legislative intent to compel a plaintiff to bring in as a necessary party defendant a person over whom the court, at the plaintiff's instance, in any event, could not obtain jurisdiction, except by voluntary appearance.

If the contention of the Alien Property Custodian were sustained, the result would be to make section 9 practically useless in those cases where a claimant sought his remedy against a nonresident enemy by a suit in equity in a District Court of the United States. It would manifestly defeat the purpose of the act, and be most unfair to an American citizen, to deprive him of the simple remedy which Congress has constructed, and compel him to resort to the uncertainties of some international or other new tribunal which may hereafter be erected.

2. The second ground of demurrer rests on the proposition that it must be presumed that the proper party defendant is the Treasurer of the United States.

Subsection (c) of section 7 of the act as amended November 4, 1918, provides:

"The sole relief and remedy of any person having any claim to any money or other property heretofore or hereafter conveyed, transferred, assigned, delivered or paid over to the Alien Property Custodian, or required so to be, or seized by him shall be that provided by the terms of this act, and in the event

of sale or other disposition of such property by the Alien Property Custodian shall be limited to and enforced against the net proceeds received therefrom and held by the Alien Property Custodian or by the Treasurer of the United States."

Section 9 (eliminating language not material to this case) provides:

"That any person, * * * claiming any interest, * * * in any money or other property which may have been conveyed * * * or paid to the Alien Property Custodian hereunder, and held by him or by the Treasurer of the United States, or to whom any debt may be owing from an enemy, * * * whose property * * * shall have been conveyed * * * or paid to the Alien Property Custodian hereunder, and held by him or by the Treasurer of the United States, may file with the said Custodian a notice of his claim under oath, * * * and the President, if application is made therefor by the claimant, may, with the assent of the owner of said property and of all persons claiming any right, title, or interest therein, order the payment * * * or delivery to said claimant of the money or other property so held by the Alien Property Custodian or by the Treasurer of the United States. * * * If the President shall not so order * * * or if the claimant shall have filed the notice as above required and shall have made no application to the President, said claimant may * * * institute a suit in equity in the District Court of the United States * * * (to which suit the Alien Property Custodian or the Treasurer of the United States, as the case may be, shall be made a party defendant), to establish the interest, right, title, or debt so claimed, and if suit shall be so instituted then the money or other property of the enemy * * * shall be retained in the custody of the Alien Property Custodian, or in the Treasury of the United States, as provided in this Act, and until any final judgment or decree which shall be entered in favor of the claimant shall be fully satisfied by payment or conveyance, * * * by the defendant or by the Alien Property Custodian or Treasurer of the United States on order of the Court, or until final judgment or decree shall be entered against the claimant, or suit otherwise terminated."

Section 12 of the act provides:

"That all moneys (including checks and drafts payable on demand) paid to or received by the Alien Property Custodian pursuant to this act shall be deposited forthwith in the Treasury of the United States, and may be invested and reinvested by the secretary of the Treasury in United States bonds or United States certificates of indebtedness, under such rules and regulations as the President shall prescribe for such deposit, investment, and sale of securities. * * *" Comp. St. 1918, § 3115½ff.

It is, of course, presumed that public officers do their duty, and no doubt the Custodian was obligated to deposit the money forthwith in the Treasury of the United States. "Forthwith," however, is an elastic expression, and it is conceivable that the Alien Property Custodian may be doing his full duty, and yet for some proper reason may not immediately deposit the money with the Treasurer. On the bill as framed, the money is in the custody of defendant. If, in point of fact, it is not in his custody, then that fact should be alleged in the answer and set up by way of defense. It is unnecessary to determine at this time whether such a defense would be good.

For the reasons outlined (and more could be added) the motions to dismiss are denied.