## WILSON v. MILLER, Alien Property Custodian, et al.

(District Court, E. D. New York. July 27, 1921.)

1. **War ⊜⟝12—Attorney may collect from property in hands of Alien Property Custodian for services to an alien only up to October 6, 1917.**

   Section 9 of the Trading with the Enemy Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½e), amended June 5, 1920, to provide that a debt shall not be allowed under this section against property in the hands of the Alien Property Custodian, unless it was owing to and owned by claimant prior to October 6, 1917, was within the valid powers of Congress as applied to an attorney's inchoate lien for services in defending a claim against the property subsequent to October 6, 1917.

2. **War ⊜⟝12—Attorney may not collect from property in hands of Alien Property Custodian for services rendered after October 6, 1917.**

   Notwithstanding section 7 of the Trading with the Enemy Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½d), providing that an enemy or ally of an enemy may defend by counsel any suit in equity or action at law, under section 9 (section 3115½e) an attorney may not recover from property in the hands of the Alien Property Custodian for legal services rendered since October 6, 1917, because his claim is not an interest, right, or title in the property conveyed, or a debt owing from an alien enemy accruing prior to October 6, 1917, and if the services were rendered to the alien or to the property, they were unlawful, except as they were directly in defense of an action.

3. **War ⊜⟝12—Attorney may collect from property in hands of Alien Property Custodian on claim assigned by his former partner.**

   Where a claim for services as an attorney rendered prior to April 30, 1915, had been acquired by plaintiff from his former law partner on the dissolution of the partnership prior to October 6, 1917, plaintiff may recover on such claim against property of the alien in the hands of the Alien Property Custodian, although assignment of the claim by plaintiff's former partner was made in April, 1919; it not being an assignment prohibited by section 7 and 9 of the Trading with the Enemy Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 3115½d, 3115½e), and being in no way by or on account of the alien enemy.

4. **War ⊜⟝12—Assignment of property in hands of Alien Property Custodian by alien enemy conveys no rights.**

   An alien enemy's consent, assignment, or acquiescence in an attorney's claim for services in defense of property now in the hands of the Alien Property Custodian can give the attorney no title to the property.

5. **Interest ⊜⟝39 (5)—Attorney for alien enemy entitled to interest from date of rendering bill.**

   An attorney for an alien enemy, whose property is in the hands of the Alien Property Custodian, is entitled to interest on the amount allowed by the decree from the date when he presented the bill, or brought it to the attention of the alien in the usual manner between attorneys and clients.

At Law. Action by Edward H. Wilson against Thomas W. Miller, as Alien Property Custodian, and others. Judgment for plaintiff for part of the amount sued for.

Edward H. Wilson, of New York City, in pro. per.

Leroy W. Ross, U. S. Atty., of Brooklyn, N. Y., Dan Hightower, Jr., Sp. Asst. Atty. Gen., and Ralph Copland, Asst. U. S. Atty., of New York City, for defendants.

⊜⟝For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

CHATFIELD, District Judge. Since the trial of this action, Mr. Thomas W. Miller has been appointed Alien Property Custodian, and Mr. Frank White Treasurer of the United States, and the proper substitution of parties will be considered ordered upon the record.

The plaintiff seeks to recover from property in the hands of the Alien Property Custodian $3,750 for services rendered, of which $750 is for services prior to May 1, 1915, and one-half of the balance for services rendered prior to October 6, 1917. These services were rendered in defending an action brought against the alien corporation, which retained the plaintiff and his predecessors in interest as its attorneys at law. Since the property has been taken by the Alien Property Custodian, the action has been upon the court calendars in this city, and the plaintiff herein was bound, under his duty as attorney, to see that the litigation was not allowed to go by default, and to turn matters over to the Alien Property Custodian, which he has done.

[1] On June 5, 1920, subdivision 9 of the statute known as the Trading with the Enemy Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½e), was amended to provide:

"Nor in any event shall a debt be allowed under this section unless it was owing to and owned by the claimant prior to October 6, 1917." Chapter 241. Act June 5, 1920 (41 Stat. 977).

The plaintiff had made no claim prior to this amendment and his rights were changed thereby, as the amendment was within the valid powers of Congress. The plaintiff had an attorney's lien, inchoate, which had not attached or affected the property as it was turned over to the Alien Property Custodian; but since the date of this turning over he has, in so far as the litigation could be conducted under the Trading with the Enemy Act, been protecting from the claim in litigation property belonging to or held by the United States, through the Alien Property Custodian. This litigation apparently could not be prosecuted during the war, but the Alien Property Custodian had the right to do what was necessary to protect or preserve the property— that is, the rights in litigation—and apparently by acquiescence or stipulation this work has been done by the plaintiff under section 7, chapter 106, Act Oct. 6, 1917, 40 Stat. 416 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½d).

[2] "An enemy or ally of enemy may defend by counsel any suit in equity or action at law which may be brought against him." But his claim for services to the Alien Property Custodian, since October 6, 1917, cannot be a claim or lien against any government property, or against the specific property in question, so long as the property is in the hands of the Alien Property Custodian, as it is not an "interest, right or title in the property" conveyed, or "a debt owing" from the alien enemy and accruing prior to October 6, 1917, but is in connection therewith. If the services rendered by the plaintiff since October 6, 1917, when the Trading with the Enemy Act was passed, have been rendered to the property, or to the enemy alien owner of the property, then these services have been contrary to the provisions of the Trading with the Enemy Act, except in so far as they have been directly in de-

fense of the action. The plaintiff has been at all times loyal and working in conjunction with the government; but, so long as the present status is continued, his claim for services cannot be recognized as against the property, in so far as these services have been rendered since October 6, 1917.

[3] As to the services rendered before that time, the claim presents unusual features. The amount of $750 is claimed for services rendered prior to April 30, 1915, by the plaintiff and his former law partner. This claim belonged to and was owned by the plaintiff prior to that time, and has not been acquired by him since October 6, 1917, although by the arrangement between the partners, entered into on May 1, 1915, Mr. Wilson, the plaintiff, was to receive the whole of this claim as a part of his share of the partnership property. The release or assignment evidencing this fact, made on the 9th day of April, 1919, by Mr. Wilson's former partner, was not an assignment such as is prohibited by sections 7 and 9 of the Trading with the Enemy Act, and was in no way by or on account of the alien enemy.

[4] Since May 1, 1915, the plaintiff as an individual has rendered all the services for which compensation is claimed, and was entitled on October 6, 1917, if on that date his services as attorney had been terminated, to be paid the value of the services up to that time. He roughly estimates that these amounted to the sum of $1,500. This is too large a proportion, but the amount can be determined. It is true that consent or assignment or acquiescence in this claim by the enemy alien, signed May 11, 1920, could give the plaintiff no title. Such an evasion of the statute would be palpable, and would open the door to the transfer of any property in the hands of the Alien Property Custodian, if the alien enemy could be reached and wished to become a party to a scheme to withdraw the property from the hands of the Alien Property Custodian and place it in the hands of some friendly individual.

The only purpose which could be effectuated by such consent, or of the default decree against the enemy alien, is to estop the enemy alien, if in the future the plaintiff is in a position to litigate this claim with the enemy alien, from contesting the amount of the claim. In this sense, consent of the enemy alien might be of some evidential value as to the amount of the claim, but the plaintiff cannot obtain title by the default decree, and in fact does not seek to do so.

Prior to the amendment of June 5, 1920, the plaintiff could have claimed such rights against the property in the hands of the Alien Property Custodian as he was entitled to prior to June 5, 1920, if these rights were not acquired through any relations with the enemy. After June 5, 1920, the plaintiff could claim no rights, without reference to the manner of acquiescence, which had not been acquired prior to October 6, 1917.

As to the $750 claim, the amendment of June 5, 1920 (chapter 241, 66th Session of the Congress), therefore, gave the plaintiff no greater rights, and took away no rights, in this particular case, other than those which he had previous to that time. His claim for $750, subject to any opposition which the Alien Property Custodian may wish

to make to the amount of the claim, and his claim for $1,500 for services as attorney prior to October 6, 1917, are allowable, and the plaintiff may have a decree therefor, upon determination of the amount in any manner which may be ordered. The balance of the claim by the plaintiff will be dismissed without prejudice to any future presentation thereof which may be allowable according to law.

[5] The plaintiff is entitled to interest upon the part of the claim allowed only from the date when the amount of his claim was liquidated and bill rendered; that is, from the date of May 20, 1920, when the plaintiff as attorney presented the bill or brought it to the attention of the alien and treated it as a liquidated amount, in the usual manner between attorneys and clients.

As to the course of this litigation in the future, the plaintiff is still under the obligation of doing his duty by the litigation, to the extent, at least, of seeing that the Alien Property Custodian is put in a position where the property rights involved may be protected. But any claim of compensation therefor by the plaintiff, as against the property in the hands of the government, will depend upon the relations between the Alien Property Custodian and the plaintiff as his representative.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes