REISING v. DEUTSCHE DAMPFSCHIFFAHRTS-GESELLSCHAFT HANSA et al.

(Circuit Court of Appeals, Second Circuit. November 15, 1926.)

No. 46.

1. War ⚖➞12—Statute authorizing suit against Alien Property Custodian to recover debts owing by enemies is remedial, and should be liberally construed (Trading with the Enemy Act, § 9 [a], [e], as amended by Act March 4, 1923, § 1 [Comp. St. § 3115½e]).

Trading with the Enemy Act, § 9 (a), (e), as amended by Act March 4, 1923, § 1 (Comp. St. § 3115½e), authorizing suit against Alien Property Custodian by persons not enemies nor allies of enemies to recover debt owing by enemies seized by Custodian, is remedial, and should not be construed so as to defeat its purpose.

**2. War ⬡⟹12—Statute authorizing suits to recover debts seized by Alien Property Custodian held only to require citizenship when suit is commenced, and not at date of accrual of debt nor effective date of statute; "claimants other than citizens of the United States" (Trading with the Enemy Act, § 9 [a] [e], as amended by Act March 4, 1923, § 1 [Comp. St. § 3115½e]).**

Trading with the Enemy Act, § 9 (a) and (e), as amended by Act March 4, 1923, § 1 (Comp. St. § 3115½e), authorizing suits to recover debts seized by Alien Property Custodian, and providing that debt shall not be allowed unless it was owned by claimant prior to October 6, 1917, "and as to claimants other than citizens of the United States," unless it arose with reference to money or property held by Custodian, *held* only to require citizenship when suit is commenced and not when debt accrued or on effective date of statute, as condition of right to sue; phrase "claimants other than citizens of the United States" meaning persons not citizens at time of suit.

**3. War ⬡⟹12.**

German citizens, residing in United States during war, were not enemies, within Trading with the Enemy Act, § 9 (e), as amended by Act March 4, 1923, § 1 (Comp. St. § 3115½e), except when interned.

**4. War ⬡⟹12—In suit against Alien Property Custodian, evidence held to establish employment contract by which German corporation agreed to pay claimant $6,000 a year and expenses and amount of expenses due (Trading with the Enemy Act; § 9 (e), as amended by Act March 4, 1923, § 1 [Comp. St. § 3115½e]).**

In suit under Trading with the Enemy Act, § 9 (e), as amended by Act March 4, 1923, § 1 (Comp. St. § 3115½e), against Alien Property Custodian and German corporation, evidence *held* to establish employment contract by which German corporation agreed to pay claimant $6,000 a year and expenses and amount of expenses due.

Appeal from the District Court of the United States for the Eastern District of New York.

Suit by William Reising against the Deutsche Dampfschiffahrts-Gesellschaft Hansa, Howard Sutherland, as Alien Property Custodian, and Frank White, as Treasurer of the United States, to recover for a debt alleged to be owing by the Deutsche Dampfschiffahrts-Gesellschaft Hansa, an alien enemy. Decree for defendants, and plaintiff appeals. Reversed.

Katz & Sommerich, of New York City (Otto C. Sommerich and Maxwell C. Katz, both of New York City, of counsel), for appellant.

William A. De Groot, U. S. Atty., of Brooklyn, N. Y., and Dean Hill Stanley, Sp. Asst. Atty. Gen., for appellees.

Before HOUGH, MANTON, and MACK, Circuit Judges.

MANTON, Circuit Judge. The appellant was a citizen of Germany, residing in this country when, between January 1, 1916, and March 1, 1917, he performed services and expended moneys for the Deutsche Dampfschiffahrts-Gesellschaft Hansa, a German corporation operating a steamship line known as the Hansa Line. He was naturalized a citizen of the United States on April 25, 1924, and filed a claim for and began this suit on July 17, 1924, against the steamship company, the Alien Property Custodian and the Treasurer of the United States to obtain payment of his debt under section 9 (e) of the Trading with the Enemy Act (chapter 106, 40 Stat. 411, as amended by Act March 4, 1923 [Comp. St. § 3115½e].). The German corporation filed its answer, but has defaulted. The claim is for services as marine superintendent under an annual employment contract which was for $6,000 a year and expenses. The expenses included rent, stenographer, telegrams, and postage, and amounted to $3,500. A check was delivered for $6,301.12 by the Associated Operating Company in behalf of the German corporation, but payment thereof was stopped. The bill asks for $6,301.12, and recovery is sought upon the alleged value of the services pursuant to the contract, together with the expenses, rather than for the amount of the check issued. After a trial, judgment was directed against the appellant, because he was not a citizen of the United States at the time of the effective date of section 9 (e), which was March 4, 1923. The sections referred to are (section 9):

"(a) That any person not an enemy or ally of enemy * * * to whom any debt may be owing from an enemy or ally of enemy whose property or any part thereof shall have been conveyed, transferred, assigned, delivered, or paid to the Alien Property Custodian or seized by him hereunder, and held by him or by the Treasurer of the United States may file with the said Custodian a notice of his claim under oath and in such form and containing such particulars as the said Custodian shall require; * * * and said claimant may institute a suit in equity in the Supreme Court of the District of Columbia or in the District Court of the United States for the district in which said claimant resides, * * * to establish the * * * debt so claimed, and if so established the court shall order the payment," etc.

"(e) No money or other property shall be returned nor any debt allowed under this section to any person who is a citizen or sub-

ject of any nation which was associated with the United States in the prosecution of the war, unless such nation in like case extends. reciprocal rights to citizens of the United States; nor in any event shall a debt be allowed under this section unless it was owing to and owned by the claimant prior to October 6, 1917, and as to claimants other than citizens of the United States unless it arose with reference to the money or other property held by the Alien Property Custodian or Treasurer of the United States hereunder."

The appellant does not claim that the debt arose with reference to money or other property in possession of either the Custodian or the Treasurer. The appellees claim that the appellant, not having become a citizen prior to April, 1924, and the cause of action not having arisen with reference to money or other property held by the Alien Property Custodian or Treasurer of the United States, he cannot maintain this action. Section 9 (e) provides: "Nor in any event shall a debt be allowed under this section unless it was owing to and owned by the claimant prior to October 6, 1917." The appellant's indebtedness arose and was owing prior to that date. The original Trading with the Enemy Act (chapter 106, 40 Stat. 411) contained simply subdivision (a), § 9. Under this section, enacted October 6, 1917, a German citizen or a citizen of any other country residing in the United States was not an enemy and could have recovered a debt out of the property of the debtor whose property had been seized. Subsequent to this original enactment, namely, in 1920, Congress limited the general recovery of debts to citizens of the United States, and it restricted the right of alien nonenemies, in the recovery of debts, to debts which constituted, in effect, liens upon the property.

[1, 2] If the statute applies to an alien nonenemy resident of this country who became a citizen before the commencement of his suit, this appellant should succeed because his debt was due and the statute authorizes an American citizen to establish his debt as the appellant had. Section 9 (e) does not make it a condition to the right to press such a claim that the debt accrue after the grant of citizenship, nor does it, by expressed words, depend upon the effective date of the act under which recovery is sought. The legislation is of a remedial character, and it should not be construed so as to defeat its evident purpose. Rockwood v. Miller, 53 App. D. C. 366, 290 F. 341. Congress had it within its power to impose such terms as it thought wise to exclude claimants. If it wanted only citizens

assisted who resided here before the effective date of section 9 (e), it would undoubtedly have said so. Spiegelberg v. Garvan (D. C.) 260 F. 302. A liberal construction of this section has been deemed necessary to effect the purposes of Congress and to give a remedy in all cases to be covered. Miller v. Robertson, 266 U. S. 243, 45 S. Ct. 73, 69 L. Ed. 265. Bearing in mind this admonition, it would be wrong to read into the statute citizens of the United States only whose citizenship dated prior to October 6, 1917. The phrase "claimants other than citizens of the United States" means persons who are not at the time of suit citizens of the United States.

[3] Nothing in the statute requires suitors to plead and show more than that they were citizens at the time of suit. The act, in other sections, characterizes as enemies Germans resident of Germany, but Germans residing in the United States are not. They were enemies when interned. Appellant was residing here during the war period, and, not having been interned, he was not an enemy within the meaning of the act. The first part of section 9 contemplates this construction, for it says: "Any person not an enemy or ally of enemy," to whom any debt may be owing from an enemy, has a right to institute a suit in equity. To interpret the language of section 9 as was done below would be an unjust qualification without legal reason therefor. Moreover, wherever the act considers time of status as essential, it specifically so states. It refers in section 9 to persons entitled to return of money and says specifically that they must have been citizens or qualified claimants at such time as at the time of seizure. Congress could not have intended a limitation which would deny a person continuously resident here his privilege of suit. The distinctions made in the act are not between Germans, resident of the United States, but between persons resident here, who are characterized as nonenemies, and persons resident in Germany, who are regarded as enemies. The reason for this distinction was founded upon the purpose of prevention of aid to the enemy. Sutherland v. Mayer, 46 S. Ct. 538, 70 L. Ed. 943.

If Congress intended citizenship at the time of the effective date of the statute, it would have expressed it, and the absence of this time element is significant. Johnson, Commissioner, etc., v. Sullivan (C. C. A.) 8 F.(2d) 988. The right and qualification to sue have usually referred to the time of the commencement of suit. The jurisdiction of the District Court is dependent upon proper

diversity of citizenship existing at the time of the commencement of the action. Stewart v. Dunham, 115 U. S. 61, 5 S. Ct. 1163, 29 L. Ed. 329. Limitations of time to sue have the same test of commencement of suit, and qualifications to sue should be dependent upon the same test. We should interpret the statute so as to accord this right of suit, if possible.

We are referred to Swiss National Insurance Co. v. Miller, 267 U. S. 42, 45 S. Ct. 213, 69 L. Ed. 504, as analogous to the case at bar. In that case the property was seized under the Trading with the Enemy Act of October 6, 1917, where an enemy was deemed to mean and include "any * * * corporations incorporated within any country other than the United States and doing business within the territory including that occupied by the military or naval forces of any nation with which the United States is at war." There the plaintiff's petition admitted that at the time of the seizure the plaintiff was doing business in Germany and was then an enemy of the United States under the definition, and that the seizure was lawful. It was alleged that the corporation stock was largely held by Germans and a failure to aver to the contrary was held to make this a fact of the case on the defendant's motion to dismiss the bill. There were three grounds for seeking recovery: First, that since the seizure the company had ceased to do business in Germany; second, that the war had been declared officially ended; and, third, that by virtue of the amendment to the Trading with the Enemy Act of June 5, 1920, c. 241, 41 Stat. 977, the plaintiff became expressly entitled to recover. Answering the first, the Supreme Court said:

"A change like this would not take away the status of the seized property as enemy property. The withdrawal from business in Germany might well involve a transfer of something of value from the plaintiff to enemy citizens or subjects and strengthen the enemy resources."

At bar, the appellant was never an enemy, and the money was for the benefit of a resident of the United States and a citizen at the time of the commencement of his suit. In Johnson v. United States, 160 U. S. 546, 16 S. Ct. 377, 40 L. Ed. 529, Congress gave power to the Court of Claims to adjudicate claims for "property of citizens of the United States taken or destroyed by Indians."

The Supreme Court held that the claimant must have owned the property at the time of its destruction. At the time of destruction, the property there in question belonged to an alien. He did not become a citizen until after the wrong was committed. He was a citizen at the time of the passage of the act, but the court held that the mere fact that he was a citizen at the time of the passage of the act was not sufficient, and that Congress intended clearly, by the expression "property of citizens of the United States," that the claimant should have been a citizen at the time of destruction. In the case at bar, by the Act of June 5, 1920, the right to collect a debt against the seized fund was limited to citizens of the United States. A general statute permits such suit as this for a debt, but this amendment limits the persons entitled to sue to citizens of the United States. The result in the Johnson Case is not at variance. Because this amendment to the Trading with the Enemy Act is a limitation upon the general right to sue, it requires a strict construction as to the expression "claimants other than citizens of the United States." The appellant possessed the qualifications to sue when he became a citizen before the commencement of the action, and is entitled to the benefits of the provisions of section 9.

[4] It is argued that the appellant has not proved the contract and expenses in the sum that he now asks judgment. As a witness the appellant testified, and it is uncontradicted, that he was employed at $5,000 a year, and later at $6,000, by agreement with the Hansa Line. This salary was paid to him, except for the time before stated. It was more than a mere drawing account; it was a sum as salary fixed by mutual agreement. The items of expenses were summarized in a statement offered in evidence and sworn to by the appellant. It is not denied that these items of expense were legitimate, and it was within the authority of the appellant to incur them. The total sum was $9,452.97, but moneys were advanced to the appellant's daughter, who was a student in Germany, and with due allowance therefor, as testified to by her, reduces the same to $6,301.12, which is the sum acknowledged by the Hansa Line to be due, and for which they issued the check. The appellant should have judgment for the full amount.

Judgment reversed, with costs.