## NORRIS et al. v. BERGDOLL et al.

District Court, E. D. Pennsylvania. May 3, 1927.

No. 2439.

**War** ⊚⇒12—**Debt contracted after October 6, 1917, not barred from allowance against Alien Property Custodian (Trading with the Enemy Act, § 9 [e], as amended by Act June 5, 1920 [Comp. St. § 3115½e]).**

The provision of trading with the Enemy Act, § 9 (e), as amended by Act June 5 1920 (Comp. St. § 3115½e), that no debt should be allowed as against the property in the hands of the Alien Property Custodian, "unless it was owing to and owned by the claimant prior to October 6, 1917," does not apply to nor exclude allowance of a valid debt contracted after that date by one whose property was afterward seized by the Alien Property Custodian.

In Equity. Suit by Thomas J. Norris and D. Clarence Gibboney, administrators c. t. a. of the estate of D. Clarence Gibboney, deceased, against Grover C. Bergdoll, Thomas W. Miller, Alien Property Custodian, and others. On motion for reargument. Denied.

Ladner & Ladner, of Philadelphia, Pa., for plaintiffs.

D. R. Griffith, Jr., of Philadelphia, Pa., for defendant Bergdoll.

Vincent A. Carroll, of Philadelphia, Pa., for defendant Alien Property Custodian.

George W. Coles, U. S. Atty., of Philadelphia, Pa.

DICKINSON, District Judge. This motion was filed at the suggestion of the court as an act of simple justice to the assistant district attorney who had in charge the interests of the United States. On it the whole question has been reargued.

The case has a dual aspect. In one phase it is a suit against Grover C. Bergdoll; in another phase it is a proceeding to have the United States release its claim to such part of the property in the custody of the Alien Property Custodian as represents a "debt" due to the late D. Clarence Gibboney. We have made a finding in respect to this debt, but made it on the assumption that the United States had no interest in the cause. This assumption was an unfounded one, and its statement did an injustice to the district attorney who represented the interests of the United States in the controversy. It may be premised that this proceeding has its basis in the provisions of the act of Congress under authority of which all the property of Grover C. Bergdoll, which could be reached, was seized.

The plaintiffs aver that Bergdoll was indebted to their decedent, and brought this action to have the question of debt (which Bergdoll denied) determined. Two jurisdictional questions were raised by the Alien Property Custodian. The district attorney was not of counsel at that time. One was that the claim of the plaintiffs was not for a "debt," within the meaning of the act of Congress; the other was that the indebtedness "was not owing and did not belong to" the plaintiffs before October 6, 1917, and the conclusion was invoked that the plaintiffs could not recover anything out of the funds in the hands of the Alien Property Custodian. The first of these questions was ruled against the United States. The second was not discussed, because the then counsel for the Alien Property Custodian did not press it. The motion to dismiss the proceedings, based upon the two grounds stated, was accordingly denied, and the cause came up for trial.

At the trial Bergdoll was represented by his attorney in fact and by counsel. The district attorney appeared as counsel for the United States. As Bergdoll was denying the claim of Gibboney, the district attorney felt it to be fair to both parties to leave to them the conduct of this branch of the case, but gave clear and positive notice on behalf of the United States that it stood upon the second ground of jurisdictional objection above mentioned. The first question is admittedly now out of the case because of the ruling of the Supreme Court in Miller v. Robertson, 266 U. S. 243, 45 S. Ct. 73, 69 L. Ed. 265. Of course, if the question of indebtedness was determined against the claimant, there was no need for the United States to intervene; but, if the claim was sustained, notice was given that the United States desired to be heard, and the district attorney submitted a brief in support of the position taken. By general acquiescence the discussion of this question was deferred until after the issue between Gibboney and Bergdoll had been determined.

The assistant district attorney who had the interests of the United States in charge did not abandon the position taken nor waive the point made, but, on the contrary, has been insistent upon it and filed a brief in which the objection raised was fully discussed in all its aspects. There was something of an interval between the conclusion of the trial and the ruling of the cause, due to some delay in the transcription of the exhibits which were put in evidence. What was done was that the case was determined with only a perfunctory reference to the question raised by the United States. When the omission to give it real consideration was called to the attention of the court, leave was given the district attorney to file the present motion for a reargument solely for the discussion of this second question, and it is now before us.

Counsel for the claimant assumes his full share for the mistake made, but it was really due to a misinterpretation by the court of the statement made by him. The statement was that the objection in question had been withdrawn and waived. He referred, however, to the original failure to press the point, and its practical abandonment, not to any waiver by the district attorney. He now reurges this upon us and this presents the first question for discussion.

1. Has the right to make this objection been lost by its once abandonment? The conclusion we have reached is that it is still in the case. In the first place, the question is really one of jurisdiction. The proceeding is statutory, and really one against the United States in its ultimate results. The right of the claimant is really a conditioned privilege. If

he is not within the act, he cannot recover, and it is part of his case to show that he has a claim such as gives him a right to the remedy invoked. In the second place, the only finding made was that the point had not been pressed, and, in consequence, was not discussed. The question turns in one aspect upon dates. It may well be that the then counsel did not press the point, because he was then standing upon the pleaded facts, and they may not have shown the pertinent dates. There was no formal nor express waiver, nor any abandonment, further than a failure to press the point in argument.

2. The second point made, that in any event the proceeding is well founded as against Bergdoll, we likewise deem not well taken, because it has no practical value. This proceeding is aimed at the result of taking out of the hands of the Alien Property Custodian sufficient of the funds in his hands to meet the indebtedness of Bergdoll to the claimant. If he fails to reach this objective, it wholly fails. Doubtless an alien enemy debtor may be sued as may another debtor, and a judgment recovered against him, notwithstanding that all his property has been taken over by the United States. This, however, would be in an action at law. Whether the finding of indebtedness and of its sum in this proceeding would be findings to which, as against the debtor, the doctrine of res adjudicata applies, is a question not presented by this record.

3. This brings us to the meritorious question, which is whether the claimant is shut out by the phrase in the amended act that the only debt which can be "allowed," as provided in the act, is one which "was owing to and owned by the claimant prior to October 6, 1927." This claim is within the verbiage of the phrase in the sense that the indebtedness arose after that date. The debt, for the purposes of this discussion, may be said to have been incurred before May, 1920, when the acts of Bergdoll, because of which his property was seized, were committed. The phrase quoted was not in the original act, and was not incorporated in it until the passage of the Act of June 5, 1920 (Comp. St. § 3115½e). If it is given the interpretation for which counsel for the United States contends, it is retroactive, in the sense that it deprives the creditor of a claim for debt which was lawful when it arose, and which, except for this statute, was collectible by law, and deprives him of his property because of no act of his own, but because of the subsequent acts of his debtor, in which he had no participation.

The point is made and urged that the act is unconstitutional, because it works this retroactive result, thereby depriving the creditor of his property without due process of law. To this view we cannot accede. Acts (other than ex post facto) are not unconstitutional because of retroactive effect, nor is the creditor deprived of any right of property. What he had was a claim of debt against Bergdoll, and of this he was not deprived. Retroactive statutes are sometimes justified, and indeed sometimes necessary; but usually and commonly they have in them that which offends against the common judgment of what is just. Because of this we are in accord with that canon of construction which the claimant invokes, that when a statute is open to two constructions, one of which does and the other does not offend against the common sense of justice, the meaning which works a result which the common judgment would condemn as unjust will not be imputed to the legislative mind, unless the language of the statute is compelling.

The Trading with the Enemy Act had a clear and obvious purpose. It was in no sense aimed at innocent citizens who had had dealings with those who were afterwards found to be alien enemies. Such an act is emphatically of that kind, which should be given a construction consistent with its purpose and the motive for its enactment, when this can be done without doing violence to its language. This thought is emphasized, and such a construction of other features of this very act is vindicated, in the case of Miller v. Robertson, supra.

We go directly to the language of this statute. Had Congress had in mind to exclude all indebtedness incurred since October 6, 1917, although existing when the Act of June 5, 1920, was passed, it would be expected that appropriate language would have been chosen to express this thought, and if the thought had been to shut out even claims for debts arising after the passage of the act, some reference would have been made to pre-existing debts, either by excepting them or making it clear they were included. Instead of the choice of the phraseology indicated, Congress employed words in well-chosen phrase to express the thought of title to a debt, but not to the incurring of the debt, for the phrase is a "debt owing to and owned by the claimant" before the named date.

Without extending the discussion, we state the conclusion reached, which is that this language does not apply to the time of the creation of the debt, but to the time when the

claimant otherwise acquired title to it. It has been urged upon us that this language has reference to the "allowance" of claims by executive action, and not to judicial proceedings. Undoubtedly two methods of according relief to deserving claimants are created by the act. One is that the executive may award relief on application, by "allowing" the claims of third parties; the other is to afford relief through judicial proceedings. The conclusion we have reached makes it unnecessary to discuss this view.

The limits of an opinion already over long forbids particular reference to the forceful argument addressed to us by the district attorney, so well worthy of detailed examination. We have carefully weighed it but remain unconvinced. We do not find in the cases to which we have been referred any authoritative direction to hold otherwise than we have. Among these cases are the following: Banco v. Bank, 263 U. S. 591, 44 S. Ct. 209, 68 L. Ed. 465; Reising v. Deutsche (C. C. A.) 15 F.(2d) 259; Wilson v. Miller (D. C.) 274 F. 808; De La Mettrie v. James (January 3, 1927), 47 S. Ct. 264, 71 L. Ed. ——. No fact statement accompanies this report, but we read the opinion as indicating the ruling was not directed to the part of the act now under consideration.

The motion for a reargument is denied, and the judgment originally allowed may be entered.